UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN SANCHEZ, | CASE NO. 2:23-cv-01994-LK |
| Plaintiff, | ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE INFERENCE INSTRUCTION |
| v. | |
| STATE OF WASHINGTON et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff's Motion for Sanctions for Spoliation of Evidence and Request for Adverse Inference Instruction. Dkt. No. 17. For the reasons described below, the motion is denied.

## I.    BACKGROUND

Plaintiff Brian Sanchez was formerly incarcerated at the Monroe Correctional Complex ("MCC") in Monroe, Washington. Dkt. No. 17 at 2. He was housed in the Twin Rivers Unit of the MCC. *Id.*

A.    **The Incident**

Sanchez was injured during an incident that occurred on November 1, 2021, while he was incarcerated. The circumstances of how Sanchez came to be injured and the seriousness of his injuries are both disputed.

Sanchez alleges that corrections officers removed him from his cell on the belief that he and his cellmate were using drugs. Dkt. No. 17 at 2. He was removed from his cell and "slammed to the ground, which led to the onset of a seizure." *Id.* After regaining consciousness, he "became aware of intense pain in both his right hand and in his teeth. The latter had been broken as a result of being slammed to the ground." *Id.*

According to the State, earlier that day, corrections officers had noticed that Sanchez and his cellmate seemed "out of it" and were "unresponsive to staff directives," and therefore called a medical emergency. Dkt. No. 23 at 2; Dkt. No. 26-1 at 3. Suspecting that Sanchez and his cellmate were under the influence of an illicit substance, the responding officers removed them from their cell. Dkt. No. 23 at 2; Dkt. No. 26-2 at 2. Two officers escorted Sanchez out of his cell to a nearby wall to prevent him from falling; they reported that Sanchez was moving his arms and legs sporadically. Dkt. No. 23 at 2; Dkt. No. 26-2 at 2. Officers then placed Sanchez in restraints for his own safety. Dkt. No. 23 at 2; Dkt. No. 26-2 at 2. Medical staff arrived on the scene two minutes after the emergency was called, at which point Sanchez was writhing on the floor with intermittent seizures or seizure-like movements. Dkt. No. 23 at 2; Dkt. No. 26-1 at 3; Dkt. No. 26-3 at 2. Medical staff administered treatment to Sanchez, which involved giving him oxygen and an injection in his right arm. Dkt. No. 23 at 2; Dkt. No. 26-3 at 2. Within five minutes, Sanchez calmed. Dkt. No. 23 at 2; Dkt. No. 26-3 at 2. Medics then moved Sanchez to Evergreen Health Monroe. Dkt. No. 23 at 2; Dkt. No. 26-1 at 3; Dkt. No. 26-3 at 2.

1    Two days later when Department of Corrections ("DOC") investigators conducted a search

2    of Sanchez's cell, they found an "altered toilet paper roll commonly used as a smoking pipe,

3    multiple burnt pieces of paper, altered teabags, and burnt strips of foil," all indicia or paraphernalia

4    commonly associated with the narcotic "spice." Dkt. No. 23 at 3; Dkt. No. 26-4 at 2; Dkt. No. 26-

5    5 at 2.

6    The State contends that Sanchez's injuries "with his teeth and his hand" were related to the

7    seizure or illegal drug use (as opposed to excessive force), and that any harm to his hand was

8    "diagnosed as nonexistent immediately following the incident." Dkt. No. 23 at 7. Sanchez,

9    however, filed several Health Services Kites between November 2021 and March 2022

10    complaining about continuing numbness in his hand and issues with his teeth that caused "a

11    significant amount of pain in his ear, face, and head" and made "it difficult for him to sleep." Dkt.

12    No. 26-6 at 10–11.

13    **B.    Sanchez's Resolution Request**

14    Nine days after the incident, on November 10, 2021, Sanchez submitted a resolution

15    request. Dkt. No. 18-1 at 2. In it, Sanchez complains that he was mistreated during the November

16    1 incident, specifically taking issue with being "slammed and piled up on top" of by corrections

17    officers. *Id.* He reports that his right hand had been numb for over a week and that his two front

18    teeth were smashed. *Id.* Sanchez also writes that he has a history of seizures, and his episodes on

19    the day of the incident had nothing to do with drugs. *Id.* He asks to be let "out [of] the hole" and

20    to have his teeth and hands fixed. *Id.* DOC responded to him on November 29, 2021, rejecting his

21    resolution request because "there [was] another administrative review process occurring to review

22    the incident – use of force review." Dkt. No. 18-1 at 2.

23    On December 13, 2021, Sanchez filed another resolution request (styled as an "appeal" of

24    his prior request) concerning his lack of medical treatment. Dkt. No. 26-6 at 7.

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE
INFERENCE INSTRUCTION - 3

1   **C.**     **The Public Records Request**

2       Just over one month after the resolution request, on December 10, 2021, Sanchez's mother

3 submitted a public records request ("PRR"), though DOC did not receive it until over a month

4 later, on January 18, 2022. Dkt. No. 26-7 at 1. The records request asked for staff emails, video,

5 and reports with photos relating to the November 1, 2021 incident, as well as Sanchez's medical

6 file. *Id.*; *see also* Dkt. No. 18-1 at 5. DOC responded on February 15, 2022, stating that it could

7 not locate responsive records from the incident (including video) except for Sanchez's medical

8 records, which Health Services would produce. Dkt. No. 18-1 at 5–6.

9   **D.**     **DOC's 30-Day Auto-Deletion Policy for Video Footage**

10       According to DOC, videos taken by security cameras in housing units—including the video

11 that is the subject of Sanchez's motion—are digitally stored on servers and automatically deleted

12 after a 30-day retention period. Dkt. No. 24 at 2. The cameras record video only (not audio) and

13 are set up outside of the cells "to record the stoops and entryways, not into the cells." *Id.*

14 Corrections officers do not wear body cameras. *Id.*

15   **E.**     **The Instant Motion**

16       Sanchez filed this motion on August 14, 2024 seeking "an adverse inference jury

17 instruction" based on the lost video footage from the day of the November 1, 2021 incident. The

18 proposed jury instruction would "instruct[] the jury that they can presume that the destroyed

19 evidence would be favorable to plaintiff as a sanction for the spoliation of the above-mentioned

20 evidence." Dkt. No. 17 at 2.[1] Defendants oppose the motion, arguing that DOC "deleted any

21 possible video of the incident in the normal course of business" and even if it were on notice of

22

23      _____
[1] For the first time in his reply brief, Sanchez alternatively requests that the Court impose "some other remedy that gives [him] the benefit of credibility." Dkt. No. 30 at 4 (capitalization removed). This request is procedurally improper

24 and the Court does not consider it. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE INFERENCE INSTRUCTION - 4

1  pending litigation, "DOC did not act with an intent to deprive" Sanchez of electronically stored

2  information ("ESI"). Dkt. No. 23 at 1–2.

3  **II.    DISCUSSION**

4  **A.    Legal Standards**

5  There are two sources of authority for a district court's power to sanction a party who has

6  improperly destroyed evidence: Federal Rule of Civil Procedure 37(e) and the Court's inherent

7  power.

8  Under Rule 37(e)(2)(B), if a party fails to take reasonable steps to preserve ESI that should

9  have been preserved in anticipation or conduct of litigation, and the information is lost and cannot

10  be restored or replaced through further discovery, a court may "instruct the jury that it may or must

11  presume the information was unfavorable to the party" if it finds "that the party acted with the

12  intent to deprive another party of the information's use in the litigation[.]"

13  The standard for spoliation of evidence sanctions based on the Court's inherent power is

14  similar. Here, however, "[b]ecause Rule 37(e) governs both the loss of information and the

15  sanctions [requested] in this case, and because the rule's specific requirements preclude invocation

16  of a court's inherent authority," the Court must not rely upon its inherent authority and instead

17  must apply Rule 37(e). *Gregory v. State of Montana*, No. 22-35674, 2024 WL 4312740, at *8 (9th

18  Cir. Sept. 27, 2024); *see also* 2015 Advisory Comm. Cmt. to Fed. R. Civ. P. 37(e) Amendments

19  (the language in the rule "forecloses reliance on inherent authority or state law to determine when

20  certain measures should be used").

21  A party seeking sanctions for spoliation of ESI bears the burden of proof. *Ryan v. Editions*

22  *Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015).

23

24

**B.    Sanctions Are Not Warranted**

The initial threshold inquiry is when Defendants' duty to preserve data was triggered. Here, that inquiry is dispositive of Sanchez's motion.

1.    Defendants did not reasonably foresee litigation during the 30-day video retention period, and thus had no duty to preserve the video

Sanchez contends that his November 2021 resolution request (also referred to as a "grievance") provided sufficient notice to Defendants that they should have anticipated litigation and preserved any existing video. Dkt. No. 17 at 4. This is particularly so, according to Sanchez, because DOC responded to his initial grievance by informing him that a use of force incident investigation was ongoing. *Id.* He also argues that the public records request should have triggered a preservation obligation. *Id.*

The State responds that it did not reasonably anticipate litigation arising out of the incident within the thirty-day window for retrieval of video footage. Dkt. No. 23 at 3, 6–8. It argues that the earliest point at which it could have reasonably anticipated litigation was the public records request received in January 2022—which was past the 30-day period during which video of the incident could be retrieved. *Id.* at 8.

Under Rule 37(e), the duty to preserve ESI may arise before litigation is formally commenced; the duty is triggered when "a potential claim is identified." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012). This is an objective standard, guided by whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation. *Id.* at 990.

Sanchez argues that the existence of a serious "physical injury and the need for emergency medical care, combined with the timely filing of a grievance involving the incident, together trigger defendants' duty to preserve the relevant video." Dkt. No. 30 at 3. The Court disagrees.

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE INFERENCE INSTRUCTION - 6

1    Turning first to the grievance, again, it complains that Sanchez "got slammed and piled up on top

2    by D.O.C. Staff," and "lost two of [his] front teeth and . . . lost feeling in [his] right hand for being

3    mistreated during [his] seizure." Dkt. No. 18-1 at 2. Sanchez asks to be "let . . . out of the hole"

4    because, contrary to DOC staff's suspicions, "[t]here was no drugs in my system or cell" and he

5    was therefore "being punished for no reason." *Id.* In the "Suggested remedy" section of the form,

6    he asks that DOC "let [him] out of the hole" and "fix [his] teeth + hand." *Id.* The Court finds that

7    this grievance did not render litigation reasonably foreseeable. The circumstances here are

8    analogous to those in *Athay v. Washington*, where the court held that a grievance requesting

9    medical care after a corrections officer allegedly caused an inmate to break two teeth in a metal

10   turnstile did not trigger a duty to preserve video of incident. No. 3:22-CV-5422-JHC-DWC, 2023

11   WL 3892328, at *5–6 (W.D. Wash. June 8, 2023). The court reasoned that "[a]lthough the

12   grievance discusses the incident, its focus is upon the medical care Plaintiff received, and the relief

13   requested is to 'fix my teeth.'" *Id.* at *4. So too here: the grievance focuses more on Sanchez's

14   injuries and requested treatment than it does on the offending conduct. Dkt. No. 18-1 at 2; *see also*

15   *Cretacci v. Hare*, No. 4:19-CV-55-SKL, 2021 WL 201778, at *2 (E.D. Tenn. Jan. 20, 2021) (initial

16   grievance did not trigger duty to preserve video because it did not mention the possibility of

17   litigation or notify staff with appropriate authority); *Briggs v. Plichta*, No. 1:13-CV-1280, 2017

18   WL 4051694, at *3 (W.D. Mich. Aug. 11, 2017) (grievance requesting copy of a single video was

19   insufficient to create a duty to preserve all videos from different locations), *report and*

20   *recommendation adopted*, 2017 WL 3981096 (W.D. Mich. Sept. 11, 2017). Thus, "Defendants

21   had little reason to expect litigation." *Athay*, 2023 WL 3892328, at *6.

22        Additional context buttresses this conclusion. There were 11 corrections officers and one

23   registered nurse involved in the incident, and none appear to have reported excessive force or other

24   foul play. *See* Dkt. Nos. 26-1–26-3. Although DOC separately reviewed the incident for excessive

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE
INFERENCE INSTRUCTION - 7

1    use of force, Dkt. No. 18-1 at 2, there is no indication that the review concluded that anyone at the

2    scene used excessive force on Sanchez. Thus, no evidence suggests that Defendants were on notice

3    of reasonably foreseeable litigation during the 30-day period.[2]

4         Compare these facts with those in *Pettit v. Smith*, 45 F. Supp. 3d 1099 (D. Ariz. 2014).

5    There, the plaintiff—an inmate at an Arizona state prison—alleged that Smith, a prison guard,

6    violated his Eighth Amendment rights by using excessive force when escorting him from the

7    shower to his cell. *Id.* at 1102. The inmate eventually sued Smith (and others) and requested the

8    video footage. *Id.* at 1103–04. However, the video footage, along with other items of potential

9    evidence, had been destroyed or overwritten. *Id.* The court found that the defendants had a duty to

10   preserve the video evidence of the incident based on the following: (1) right after the incident, the

11   officer in charge took the video to her commanding officer to report Smith's unprofessional

12   conduct, and the officer in charge ended up writing a personnel notation for Smith; (2) that night,

13   the inmate filed a grievance report which stated several times that he had been assaulted by Smith;

14   and (3) the video was intentionally deleted a few days after the incident, not deleted subject to an

15   auto-delete policy. *Id.* at 1103, 1107–08. Similar circumstances do not exist here.

16        And even assuming without deciding that sufficiently grave injuries by themselves can

17   trigger a duty to preserve, two broken teeth and a numb hand do not rise to that level. *Compare*

18   *Musse v. King Cnty.*, No. C18-1736-JCC, 2021 WL 4709875, at *3 (W.D. Wash. Oct. 8, 2021)

19   (litigation reasonably foreseeable where inmate suffered a broken eye socket, dental injuries, and

20   traumatic brain injury for which he was sent to the hospital) *and Bistrian v. Levi*, 448 F. Supp. 3d

21   454, 463, 470–71 (E.D. Pa. 2020) (litigation reasonably anticipated where inmate's attack with a

22   razor was so "lengthy and brutal" that "the usual measures failed to break it up, forcing staff to

23

24   [2] The Court also notes that Sanchez's December 8 appeal of his grievance describes the initial grievance as relating to "lack of medical treatment . . . following a seizure that [he] suffered on Nov[ember] 1, 2021." Dkt. No. 26-6 at 7.

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE
INFERENCE INSTRUCTION - 8

deploy a munitions device" and attack was designated as a "100-level" assault, the most serious kind of inmate assault), *with Athay*, 2023 WL 3892328, at *6 (litigation not reasonably foreseeable where inmate broke two of his teeth and where his grievance focused "on his medical care, not on any allegations of wrongdoing that would implicate the . . . camera footage"). Although certain kinds of incidents may be especially likely to lead to litigation, "the mere fact of a slip-and-fall or a prison assault" is not always "enough to put defendants on notice of potential litigation and trigger a duty to preserve." *Bistrian*, 448 F. Supp. at 469.

With respect to the public records request, Sanchez's argument that it triggered a duty to preserve, Dkt. No. 17 at 4–5, is a non-starter because the request was submitted after the 30-day auto-deletion period. Dkt. No. 26-7 (records request dated December 10, 2021 and received January 18, 2022); Dkt. No. 24 at 2 (30-day deletion period).

Based on the above, the Court cannot conclude that Sanchez has established by a preponderance of the evidence that a reasonable person would have foreseen litigation before the video footage was deleted on December 1, 2021. However, even if Sanchez's grievance were sufficient to put Defendants on notice that they had a duty to preserve the video, Sanchez fails to establish the requisite intent for his requested sanction.

>   2.  <u>Even if DOC did have a duty to preserve, Sanchez has failed to show that it acted with the intent to deprive him of the information's use in the litigation</u>

Rule 37(e)(2)'s "intent" requirement "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions," including "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.* "Negligent or even

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE
INFERENCE INSTRUCTION - 9

1    grossly negligent behavior" is insufficient to show intent. 2015 Advisory Comm. Cmt. to Fed. R.

2    Civ. P. 37(e) Amendments.

3         Sanchez's primary argument in support of his proposition that DOC acted with the intent

4    to deprive him from using the video in litigation is that it acted in contravention of its six-year

5    retention policy after receiving the public records request. *See* Dkt. No. 17 at 5 ("Once DOC'S

6    duty to preserve took effect upon Analydia Cervantes sending the [public records request], DOC

7    and Defendants State of Washington were required to suspend any existing policies related to

8    deleting or destroying files and preserve all relevant documents related to the litigation." (citation

9    and quotation marks omitted)). Again, because the records request was received well after the 30-

10   day period, there was nothing to retain.

11        Sanchez also appears to argue that failing to halt the automatic deletion process in light of

12   his grievance and the use of force investigation (during which Sanchez avers that DOC "likely"

13   reviewed the video) demonstrates an intent to deprive him of the video. Dkt. No. 17 at 5. The Court

14   is not persuaded. Sanchez appears to acknowledge that he does not know whether DOC reviewed

15   the video before it was deleted, speculating only that it was "likely used" during the investigation.

16   *Id.* Sanchez's speculation about DOC's pre-deletion review of the video (and what its contents

17   might show) does not suffice to show the requisite intent. And the mere filing of a grievance and

18   opening of a use of force investigation, without more, does not transform DOC's passive deletion

19   of the video pursuant to its retention policy (which at most suggests negligence) into an intentional

20   act aimed at depriving Sanchez of the video's use in this litigation.

21        In his reply brief, Sanchez does not defend either of the above theories raised in his motion,

22   and instead advances a new theory: "intent can be inferred because, not only did Sanchez sustain

23   physical injuries to his face and mouth but was infracted based on the selfsame incident," and "[i]t

24   is not reasonable that defendants did not review the video evidence in deciding to bring charges

1    against Sanchez." Dkt. No. 30 at 5. Even if this theory were raised in a procedurally appropriate

2    manner, it is without merit. The infraction reports mention no video whatsoever; rather, they are

3    based on a physical search of Sanchez's cell two days later. Dkt. No. 26-4 at 2 ("Due to the

4    evidence found during the cell search [i.e., "an altered toilet paper roll commonly used as a

5    smoking item, multiple burnt pieces of paper, altered teabags, and burnt strips of foil . . . in

6    common areas of the cell," and "a small electric motor attached to two batteries, stripped wires,

7    gauze, and skin cream. . . . consistent with tattoo paraphernalia"] it is determined offender Sanchez

8    set a fire during the smoking of the narcotic 'spice', and possessed tattoo paraphernalia."); Dkt.

9    No. 26-5 at 2 (same). Moreover, the infraction was not based on any conduct that would have been

10   observable through video footage. Dkt. No. 24 at 2 ("The cameras are set up outside of the cells

11   and meant to record the stoops and entryways, not into the cells.").

12        In sum, Sanchez has not established that DOC acted with the intent to deprive him from

13   using the video in litigation. Even if Defendants had a duty to preserve the video, their failure to

14   halt the automatic deletion process under these circumstances amounts to no more than negligence.

15   *See Gelazela v. Santa Ana Police Dep't*, No. SACV211126HDVDFM, 2024 WL 1136338, at *2

16   (C.D. Cal. Feb. 16, 2024) ("City Defendants' alleged failure to halt their automatic deletion

17   process, without more, does not rise to a reasonable inference of intent."); *Castro v. Smith*, No. 16-

18   CV-8147 (JGLC), 2023 WL 5371311, at *12 (S.D.N.Y. Aug. 22, 2023) ("The scenario here, in

19   which evidence was deleted automatically due to DOC's failure to manually retain the video,

20   suggests only negligence."); *Porter v. City & Cnty. of San Francisco*, No. 16-CV-03771-

21   CW(DMR), 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) (erasure of a phone record pursuant

22   to a two-year retention policy "amounts to gross negligence, not intentional malfeasance").

23        For these reasons, Sanchez has not established that DOC acted with the intent to deprive

24   him from using the video in litigation.

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE
INFERENCE INSTRUCTION - 11

1

### III.   CONCLUSION

2        For the reasons explained above, the Court DENIES Sanchez's Motion for Sanctions for

3    Spoliation of Evidence and Request for Adverse Inference Instruction. Dkt. No. 17. And because

4    the Court denies the motion, the Court also denies Sanchez's request for attorney's fees and costs

5    incurred in connection with filing the motion. *See* Dkt. No. 17 at 7.

6        Dated this 4th day of November, 2024.

7

8                                    Lauren King
                                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AND REQUEST FOR ADVERSE
INFERENCE INSTRUCTION - 12